Dear Mr. Speed:
You have requested this office to answer five questions regarding the power of Tangipahoa Parish Council to investigate the Tangipahoa Parish Hospital Service District No. 1. You have asked our office to address the following questions:
1) Is the above said hospital service district a department, office or agency under the parish's jurisdiction?
The power to create a hospital service district is specifically given to the police jury of the parish. LA. R.S. 46:1051 states: "the police juries of parishes are authorized and empowered, upon their own initiative, to form and create one or more hospital service districts within the respective parishes,. . ." The power to appoint the board of commissioners for the hospital service district also lies with the police jury. LA. R.S. 46:1053 states: "The commission shall be appointed by the police jury of the parish."
The state, by statute, has given police juries the power to create hospital districts and appoint the commissioners. The First Circuit Court of Appeals has made it clear, however, that: "police juries are creatures of and subordinate political subdivisions of the state, having only such powers as are conferred upon them by the constitution and laws of the state." Washington Parish Police Jury v. Washington ParishHospital Service District, 152 So.2d 362 (La.App. 1 Cir. 1963) (certiorari denied). See also; Bagert v. Board of Ethics for electedofficials, 588 So.2d 1264 (La.App. 1 Cir. 1992). Therefore the power to create the district, to appoint the commissioners, and to remove commissioners (pursuant to LA. R.S. 46:1053(C)(3)) is the extent of the parish's authority over such districts.
2) Can the parish council investigate the conduct of the individual commissioners that it appoints and if so, what if any limitations exist as regards this investigation?
Article VI, § 15 of the Louisiana Constitution grants "general powers" to the local political subdivisions. The applicable portion of Section 15 states: "The governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it" The Fourth Circuit Court of Appeals, in a case dealing with hospital service district commissioners, has defined these "general powers" by stating: "[the State constitutional article relating to governing authorities of parishes and municipalities simply] gives a parish or municipal governing authority the right to abolish boards, commissions, agencies etc., created by such authority and is thus concerned with abolishment of entire board or other mentioned agency and not with removal of board personnel." Giammanco v. Pizzolato,275 So.2d 880 (4 Cir. 1973). Considering the jurisprudence, it is the opinion of this office that the power granted by Article VI, § 15 is to abolish the board, commission or agency, but does not imply the power to investigate individual members.
The Fourth Circuit also determined the recent statute (LA. R.S. 46:1503) governing police jury powers with respect to hospital districts is the controlling law. This subsequent special statute would supercede any other earlier general statute. Giammanco v. Pizzolato, 275 So.2d 880, at883 (4 Cir. 1973). LA. R.S. 46:1503(C)(3) does delegate a specific process by which commissioners can be removed, but only by the governing authority which appointed them, which would be the police jury.
If the conduct is a violation of the law, the appropriate law enforcement agency should be used to investigate. Our Louisiana Constitution mandates that: "[i]n each parish a sheriff shall be the chief law enforcement officer in the parish" LA. Const. Art. V §27. Therefore, the authority to conduct an investigation for unlawful misconduct lies with the Sheriff of Tangipahoa Parish.
The statute does declare that "[a]ny member of the commission may be removed from office for cause and his appointment rescinded by two-thirds vote of the elected membership of the parish governing authority which appointed him." L.A. R.S. 46:1503(C)(3). Therefore the police jury, being the parish governing authority that made the appointment, may remove a commissioner after obtaining the required elements of "two-thirds vote" and "cause." While the "cause" could be information a law enforcement agency has acquired during its investigation, there is no power specifically granted to the police jury to investigate. The only authority granted by this statute is the actual removal of individual commissioners.
3) Can the parish council investigate general, non-specific allegations of misconduct alleged by members of the public against the hospital service district's members by conducting hearings, subpoena of witnesses, subpoena of documents and if so, can these hearings be closed to the public or must they occur in open public session.
If the conduct is not a violation of the law, then the board of commissioners for the hospital service district, not the parish council, has the exclusive power to investigate members of the hospital district. Under LA. R.S. 46:1052, the "[t]he objects and purposes of the hospital service districts and the governing bodies created under the provisions of this chapter shall be: 1) To own and operate hospitals for the care of persons suffering from illnesses or disabilities which require that patients receive hospital care. (2) To administer other activities related to rendering care to the sick and injured or in the promotion of health which may be justified by the facilities, personnel, funds and other requirements available." With the unambiguous language to "own and operate hospitals", it can be implied the board of commissioners for the hospital service district has control over the hospital members, doctors and other personnel that may be engaged in misconduct. This would be a direct duty and responsibility under the management or operation of the hospital, and the board of commissioners should handle these matters. Accordingly, the parish council has not been given the power to manage or operate these hospitals and does not have the power to investigate general, non-specific allegations of misconduct alleged by members of the public. The police jury does, however, have authority over the board to make sure these responsibilities are being met. See Attorney General Opinion 80-1594-A.
4) To what extent is the parish government required to protect the privacy and secrecy of allegations of misconduct by the doctors and/or medical staff at the hospital service district?
The doctors and medical staff, as governmental employees, enjoy a protection of privacy during investigations. The Supreme Court defines the extent of protection by stating: "Public employers' intrusions on constitutionally protected privacy interest of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by standard of reasonableness under all the circumstances; under this standard, both inception and scope of intrusion must be reasonable." O'Connor v. Ortega,107 S.Ct. 1492 (1987). It is important to determine whether the information is private or public in nature, the reasonableness of the investigation and how much damage to the person may result.
5) If the parish government has the authority to review the records of the hospital district's procedure for peer review of a staff physician, are these records, the opinions of reviewing doctors and the procedure as a whole public records open to a full and complete review of the process by the general public?
As noted above, it is the opinion of this office that the parish council would not have this authority. The ability to review these type records would be vested with the management of the hospital or the hospital district board of commissioners, who is specifically delegated with the power to "own and operate" the hospital. LA. R.S. 46:1052.
There is no statute or case law that would give the general public the right to review the procedure for peer review of a staff physician. In fact LA. R.S. 13:3715.3 strictly prohibits this by stating: "[a]ny public hospital committee, medical organization peer review committee, any nationally recognized improvement agency or commission [a]ny hospital committee, the peer review committees of any medical organization shall be confidential wherever located and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be available for discovery or court subpoena regardless of where located, except in any proceedings affecting the hospital staff privileges of a physician, dentist, psychologist, or podiatrist, the records forming the basis of any decision adverse to the physician, dentist, psychologist, or podiatrist may be obtained by the physician, dentist, psychologist, or podiatrist only." These peer review records should be handled in accordance with LA. R.S. 13:3715.3, and are clearly not available for review by the general public.
I believe the above opinion has answered you questions. Should you have any further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ____________________________ CHARLES H. BRAUD Jr. Assistant Attorney General
RPI/CHB:mjb
Date Released: September 27, 2002